UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| John Philip Compton, #129830, | ) | C/A No. 4:08-2405-TLW-TER |
| Plaintiff, | ) ) ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Larry W. Powers, Director of Spartanburg County Detention Center, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

The *pro se* plaintiff filed this action under 42 U.S.C. § 1983[1] on July 3, 2008. Plaintiff alleges that his constitutional rights were violated due to medical indifference while incarcerated at the Spartanburg County Detention Facility ("SCDF"). Defendant filed a motion for summary judgment on December 19, 2008. The undersigned issued an order filed December 22, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response on January 22, 2009.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

# I. DISCUSSION

## A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

Plaintiff alleges that his constitutional rights were violated due to medical indifference while at the SCDF. Plaintiff is no longer housed at the SCDF but is currently incarcerated at Lieber Correctional Institution. Plaintiff requests monetary damages, damages for mental anguish, and nominal damages. (Complaint p. 5).

Defendant filed a motion for summary judgment asserting that plaintiff has failed to state a constitutional deprivation sufficient for recovery and that he is entitled to qualified immunity.

## B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that

2

a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has

>complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality.  Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam).  However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).  Further, while the court should afford a *pro se* litigant every reasonable opportunity

to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## D.  MEDICAL INDIFFERENCE

As previously discussed, plaintiff asserts that defendant was deliberately indifferent to his medical needs. Specifically, plaintiff alleges in his complaint that prior to his arrest on February 19, 2006, he had suffered two broken feet, three broken ribs, and a broken collar bone in an automobile accident. Plaintiff alleges that he was placed in a three man room and had to be assisted by his roommates. While at the SCDF, plaintiff asserts he requested to be seen by a doctor more than twenty times but his requests were never granted. After eight months, plaintiff contends that he began to vomit blood and was taken by EMS to the hospital where he was told he had a "very bad liver and a hernia" and that due to not having the bone set in his foot, his toes would no longer work.  (Complaint).  Plaintiff alleges that defendant Powers is "responsible for the actions and inactions of all SCDC staff." (Complaint). Plaintiff alleges that as a result of defendant's actions and inactions, he suffered great physical pain, fear, mental suffering and permanent disability. Plaintiff asserts that defendant is liable for failing to "allow the plaintiff medical attention", in failing to "assign plaintiff to a room allowing him to pull himself up rather than strain to sit up", and in failing to "supervise and control its nurses and medical staff." (Complaint).

In the present case, the plaintiff's allegations are brought against Larry Powers, the

5

Director of the SCDF. Powers submitted his affidavit in which he attests that as the Director of the SCDF he is responsible for the jail's overall operation and management. Powers attests that he and his officers try to be as sensitive as possible to the needs of the inmates as evidenced by letters of commendation received from plaintiff's Aunt and attached as "Exhibit A" to the affidavit. Powers asserts that the SCDF is generally a pre-trial detainment facility and plaintiff was detained there on a charge of murder beginning February 19, 2006. After plaintiff pleaded guilty, he was transferred to the South Carolina Department of Corrections on March 26, 2007. Powers attests that based upon plaintiff's complaint that he was not assigned a room that would allow "him to pull himself up rather than straining to sit up," he never received a request form from plaintiff to reassign his room based on medical concerns or any notification from a medical provider that plaintiff required a special room. Powers attests that when plaintiff complained of medical problems, he was treated by the medical staff at SCDF and that he defers medical decisions regarding the inmates to the medical staff.

Powers further attests that he did receive a letter from Dr. Richard Reinhardt dated March 21, 2006, regarding plaintiff's hernia and he immediately forwarded the letter to the contract physician at the SCDF, Dr. Salvatore Bianco. Powers asserts that Dr. Bianco determined that elective surgery to repair his hernia was not necessary because of plaintiff's risk of complications due to his liver Cirrhosis, Esophageal Varices, and Hepatitis C. Powers asserts that he responded to Dr. Reinhardt on March 30, 2006, based on Dr. Bianco's

6

evaluation and attached a copy of said letters as "Exhibit B."

Defendant submitted the affidavit of Judy Collins who attests that she is a Registered Nurse and the Nursing Supervisor at the SCDF. Collins attests that she is responsible for assisting and overseeing the medical care of the inmates, arranges for them to be examined by the physician when the medical situation necessitates it, and she assists with the distribution of medication to the inmate population. Collins attests that she has reviewed plaintiff's medical records and, at the time of his incarceration, plaintiff suffered from a multitude of medical conditions including Cirrhosis of the liver, Hepatitis C, an Inguinal hernia, injuries from a past motor vehicle accident, blood pressure problems and Esophageal Varices. Plaintiff received Zantac, which is used to treat and prevent ulcers in the stomach and intestines, as well as control acid in the stomach, and Inderal, a blood pressure medication. (Collins' affidavit, plaintiff's medical records). Contrary to plaintiff's allegations, Collins asserts that when plaintiff requested medical treatment, he was provided same by the SCDF medical staff and the contract physician, Dr. Bianco, and/or Spartanburg Regional Medical Center ("SRMC") when and if such treatment was warranted. (Id). Plaintiff first began to complain to the medical staff at the SCDF about his liver disease and hernia on March 8, 2006 and March 19, 2006. (Id). Plaintiff was subsequently evaluated by Dr. Bianco on March 29, 2006, who found no evidence of an "incarcerated inguinal hernia" and, thus, determined no further treatment for this affliction was necessary. Dr. Bianco also decided that based on plaintiff's medical conditions, an elective procedure to repair the hernia was too risky. (Id). On October 27, 2006, plaintiff began to profusely vomit blood as a result of his Esophageal Varices and Cirrhosis of the liver for which an ambulance was called to immediately transport plaintiff to SRMC. (Id). Plaintiff was hospitalized from October 28, 2006, until November 2, 2006, for an upper gastrointestinal bleed secondary to esophageal varices, and

he underwent an endoscopic, esophageal banding procedure to repair the areas causing the bleed. (Id). Plaintiff was scheduled for a follow-up appointment with Dr. Richard Reinhardt to evaluate his Inguinal hernia. (Id). Plaintiff was returned to the SCDF with Lortab, a pain reliever, Omeprazole, a stomach acid controller, and Propanolo, a blood pressure medication, all of which were administered as prescribed. (Id). Plaintiff was transported by the SCDF to his appointments with Dr. Reinhardt at Surgical Associates of Spartanburg. (Id). On December 30, 2006, plaintiff began to complain about a bad cough and fever and was evaluated by a nurse at SCDF and provided Motirn 200 mg and Mucinex 600 mg. (Id). On January 2, 2006, plaintiff still complained of constant coughing. (Id). Due to a concern about plaintiff's Esophageal Varices, the nurse at SCDF had plaintiff transported to SRMC for evaluation where he was diagnosed with a cough and viral illness, provided pills to alleviate his cough, and returned to the SCDF. (Id).

Also during his incarceration at SCDF, plaintiff complained of dental problems and was placed on the dental list. (Id). The SCDF contracts with a dentist to provide dental services to the inmates and inmates are placed on the dental list with emergencies treated first and others in the order they are placed on the list. (Id). The SCDF has no control over when an inmate is examined by the dentist, unless it is an emergency. (Id). Plaintiff required a non-emergency procedure, removal of several bad teeth. (Id). On October 25, 2006, Piedmont Dental extracted four of plaintiff's teeth and extracted seven on February 21, 2007. (Id). Collins attests that Dr. Bianco reviewed every request plaintiff sent to medical and determined whether or not medical treatment was necessary. (Id).

The undersigned finds that the plaintiff fails to show that defendant was deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme

8

Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must

9

be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under

10

state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendant's actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

      The plaintiff has failed to show that he was denied medical treatment. Plaintiff was seen in medical on several occasions and at the SRMC. Plaintiff underwent several procedures at SRMC related to his esophagus, and was seen in a follow-up appointment with Dr. Reinhardt for evaluation of his hernia. Plaintiff was prescribed medication for his complaints and condition. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, plaintiff has failed to show that he had a serious medical need of which defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by this defendant

"shocks the conscious" as required by Miltier v. Beorn, supra.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v. Sheffer, supra. Thus, although plaintiff did not agree with the type of treatment or the timing of treatment he received, the fact is plaintiff was provided treatment. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendant on this issue.

Additionally, any claims of medical indifference as to defendant Powers should be dismissed as he is not medical personnel and plaintiff has not shown that he interfered with his medical care. While defendant Powers did respond to Dr. Reinhardt that Dr. Bianco felt that plaintiff's conditions

created a risk of complications for which Dr. Bianco determined that the elective surgery to repair his hernia was not necessary, he was relying on the decision and opinion of the medical staff. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Plaintiff has failed to show that defendant was personally involved with any alleged denial or delay of treatment or that he deliberately interfered with plaintiff's medical treatment. Therefore, any claims against the defendant for medical indifference fails.

### E.  SUPERVISORY LIABILITY

Defendant asserts that he is entitled to summary judgment in that plaintiff cannot maintain an action against him based on a theory of supervisory liability.

There are three elements necessary to establish supervisory liability under §1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was affirmative causal link between the supervisor's inaction and the particular constitutional injury

13

suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. *citing* Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. Causation is established when the plaintiff demonstrates and affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff. Id.

Plaintiff has failed to meet this burden in that he has failed to establish a constitutional violation. Thus, it is recommended that summary judgment be granted for the defendant on the theory of supervisory liability.

### F. QUALIFIED IMMUNITY

Defendant argues that he is entitled to qualified immunity.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a

valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendant violated any of his clearly established constitutional or statutory rights. Therefore, defendant is entitled to qualified immunity

in their individual capacity. Thus, the undersigned recommends that the defendant's motion for summary judgment be granted on this issue.

### G.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### II.  CONCLUSION

The plaintiff has failed to show that defendant Powers violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendant (document #25) for summary judgment be GRANTED IN ITS ENTIRETY.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 25, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**